## UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| MATRA AMERICAS, LLC and, MATRA ATLANTIC GmbH, | | |
| Plaintiffs, | | Consol. Court No. 21-00632 |
| v. | | |
| UNITED STATES, | | |
| Defendant. | | |
| KOEHLER PAPER SE and KOEHLER OBERKIRCH GmbH f/k/a PAPIERFABRIK AUGUST KOEHLER SE, | | |
| Plaintiffs, | | Court No. 21-00633 |
| v. | | |
| UNITED STATES, | | |
| Defendant. | | |
| APPVION, LLC and DOMTAR CORPORATION, | | |
| Plaintiffs, | | Court No. 21-00634 |
| v. | | |
| UNITED STATES, | | |
| Defendant. | | |

**KOEHLER'S REPLY TO THE UNITED STATES'
RESPONSE TO KOEHLER'S MOTION TO STAY**

Koehler Paper SE and Koehler Oberkirch GmbH ("Koehler") respectfully submit this reply in further support of Koehler's motion to stay (the "Stay Motion") these consolidated proceedings

pending a final and conclusive disposition of all proceedings, including any and all appeals and appeal periods, in *Stupp Corporation et al. v. United States*, CIT No. 15-00334 ("*Stupp Corp.*").[1]

In *Stupp Corp. v. United States*, the U.S. Court of Appeals for the Federal Circuit ordered the U.S. Department of Commerce ("Commerce") to justify its use of the Cohen's *d* test in antidumping cases. 5 F.4th 1341, 1360 (Fed. Cir. 2021) ("In sum, the evidence and arguments before us call into question whether Commerce's application of the Cohen's *d* test to the data in this case violated the assumptions of normality, sufficient observation size, and roughly equal variances associated with that test."). Similarly, in *Mid Continent Steel & Wire, Inc. v. United States*, --- F.4th ----, 2022 WL 1178528, at *11 (Fed. Cir. Apr. 21, 2022) ("*Mid Continent*"), the Federal Circuit said "Commerce needs a reasonable justification for departing from what the acknowledged literature teaches about Cohen's *d*," throwing further doubt into whether Commerce could continue to use its current Cohen's *d* methodology.

In its Opposition to Plaintiffs' Motion to Stay Proceedings dated April 21, 2022, the United States advances two legal arguments against the issuance of a stay in these proceedings. First, the United States argues that the Stay Motion "assumes that the Federal Circuit will reverse Commerce's application of the Cohen's *d* test in *Stupp Corp.*" (ECF No. 32 at 4.) Second, the United States argues that the Stay Motion "overstates the importance of the Cohen's *d* test issue to the resolution of plaintiffs' complaints." (*Id.* at 4.) Both of these arguments mischaracterize the Stay Motion and the record before this Court. Importantly, all of the parties to these consolidated proceedings other than the United States have consented to the proposed stay, and

---

[1] On April 15, 2022, Judge Claire Kelly entered a scheduling order in *Stupp Corp.* that all initial and responsive briefing on the Final Results of Redetermination Pursuant to Court Remand will be submitted no later than August 15, 2022. Scheduling Order in *Stupp Corp. v. United States*, CIT No. 15-00334, ECF No. 212 (Apr. 15, 2022).

for its part, the United States has identified no harm to its own interests that would warrant a denial of the requested stay.

Regarding the first argument of the United States, a stay pending the final resolution of *Stupp Corp.* will promote judicial economy regardless of how that case is ultimately decided.  A central issue in *Stupp Corp.* is whether Commerce has acted within its statutory authority by using the Cohen's *d* test in a manner that is not consistent with sound statistical analysis as described in academic literature.[2]  In this proceeding, Koehler and Matra will argue that the approach taken by Commerce in this case was similarly arbitrary and unsupported by sound statistical analysis. *See* Matra Compl. ¶ 35 ("[B]y applying the A-T method to certain Matra sales data in reliance upon its application of the Cohen's *d* statistical test, without first assuring that the Cohen's *d* test requirements of normality, size, and equal variance were satisfied, Commerce acted arbitrarily, capriciously, and contrary to law."), ECF No. 11; *see also* Koehler Compl. ¶ 44 in No. 21-cv-00633, ECF No. 10.  Presumably, the United States will contest this issue and defend Commerce's methodology **unless** Commerce adopts a different methodology as a result of the Federal Circuit's decisions in *Stupp Corp*. and *Mid Continent*.  Accordingly, in the Stay Motion, Koehler argued that "the final resolution of *Stupp Corp.* will more conclusively address whether Commerce's application of Cohen's *d* is reasonable and consistent with law."  (ECF No. 27, at 5.)  Whether that ultimate resolution is in favor of Commerce's position, the positions advanced by Koehler and Matra, or whether the *Stupp Corp.* and *Mid Continent* cases impact the outcome in some other

---

[2]     *See Stupp Corp. v. United States*, 5 F.4th at 1357 ("We agree that there are significant concerns relating to Commerce's application of the Cohen's *d* test in this case and, more generally, in adjudications in which the data groups being compared are small, are not normally distributed, and have disparate variances. Our concerns raise questions about the reasonableness of Commerce's use of the Cohen's *d* test in less-than-fair-value adjudications, warranting further supporting explanation from the Department."); *see also Mid Continent Steel & Wire, Inc. v. United States*, --- F.4th ----, 2022 WL 1178528 at *11.

way, the proposed stay will promote judicial economy by allowing the parties to defer briefing until there is a final ruling on the legality of Commerce's Cohen's *d* methodology. All plaintiffs recognize the centrality of *Stupp Corp.* to this litigation. In addition, if this litigation proceeds on Cohen's *d* while *Stupp Corp.* is pending, it could result in potentially conflicting decisions on Cohen's *d* at the Court of International Trade.

Turning to the United States' second argument, the issues that have been addressed in *Stupp Corp.*—and will be finally resolved in that case—are critical to the claims that will be litigated in this proceeding. In describing the various claims in the complaints, the United States argues that *Stupp Corp.* will not impact "six out of the eight issues before this Court in the consolidated case." (ECF No. 32, at 4.) But simply counting the number of claims in a litigation is not a reasonable way to determine the centrality of a claim to the ultimate outcome of that litigation. As alleged in Koehler's and Matra's complaints, Commerce misapplied the Cohen's *d* statistical test and that misapplication resulted in a weighted average dumping margin that exceeded the *de minimis* threshold. *See* Matra Compl. ¶ 35; Kohler Compl. ¶ 44. If *Stupp Corp.* is ultimately resolved in favor of Koehler's position, then the entire antidumping order could be invalidated. At a minimum, the *Stupp Corp.* decision will cause the parties to re-evaluate other claims. On the other hand, if *Stupp Corp.* is ultimately resolved in favor of Commerce's position, that likewise could affect how the parties proceed with other claims. The Cohen's *d* issue is the "keystone" issue in this case. *See RHI Refractories Liaoning Co. v. United* States, 774 F. Supp. 2d 1280, 1285 (CIT 2011). It is the only issue that could lead to a lifting of the antidumping duty order and thus none of the other six issues identified by the United States even approaches the same level of importance. Considered in this context, it is unsurprising that all of the parties to these proceedings other than the United States have consented to the proposed stay.

Finally, the United States has identified no harm to its own interests as a result of the proposed stay. For this reason, *Nexteel Co., Ltd. v. United States*, Consol. No. 20-3898, 2022 WL 190759 (CIT Jan. 21, 2022), is inapposite. In *Nexteel*, the parties opposing a proposed stay argued that the stay would "materially injure" them. 2022 WL 190759, at *5. Here, all of the parties other than the United States have consented to the proposed stay. The United States misses the mark when it argues that granting a stay in this case may result in hardship or inequity to the other plaintiffs from the delay of resolving their other claims. (ECF No. 32, at 5.) Surely, if the other plaintiffs had any concern about potential harm from the stay, they would not have consented to Koehler's motion.

In the Stay Motion, Koehler made a clear showing that the proposed stay will promote judicial economy and efficiency. In contrast, the United States has shown no harm that will result in granting the stay. Under all of the circumstances, Koehler respectfully submits that granting the stay here would be a proper exercise of the Court's discretion.

## **CONCLUSION**

For the foregoing reasons, Koehler respectfully requests that the Court grant Koehler's motion to stay.

`Case 1:21-cv-00632-GSK   Document 36   Filed 05/20/22   Page 6 of 6`

Dated: April 27, 2022

Respectfully submitted,

DECHERT LLP

By: _____s/ F. Amanda DeBusk_____
F. Amanda DeBusk

F. Amanda DeBusk
Vincent H. Cohen, Jr.
Navpreet K. Moonga
1900 K Street, NW
Washington, DC  20006
amanda.debusk@dechert.com
vincent.cohen@dechert.com
navpreet.moonga@dechert.com
Tel.: +1  202  261  3300

Paul Curran Kingsbery
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
paul.kingsbery@dechert.com
Tel.: +1  212  698  3500

*Attorneys for Koehler Paper SE and Koehler Oberkirch GmbH*