UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| MATRA AMERICAS, LLC and, <br> MATRA ATLANTIC GmbH, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | ) <br> ) <br> ) <br> ) Consol. Court No. 21-00632 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMMENTS OF PLAINTIFFS DOMTAR CORPORATION AND APPVION, LLC IN OPPOSITION TO COMMERCE'S REMAND DETERMINATION**

Stephen J. Orava
Daniel L. Schneiderman
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 737-0500

*Counsel For Domtar Corporation and Appvion, LLC*

September 29, 2025

348511v12

# **TABLE OF CONTENTS**

I.    COMMERCE ERRED IN FAILING TO REDUCE CEP BY INTEREST ACCRUING ON UNPAID ANTIDUMPING DUTIES ...................................................................................................1

CONCLUSION AND PRAYER FOR RELIEF .............................................8

- ii -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*NTN Bearing Corp. v. United States*,
    27 CIT 129, 248 F. Supp. 2d 1256 (2003)..........................................................................7

**Statutes**

19 U.S.C. § 1677(25) ......................................................................................................................3

19 U.S.C. § 1677a(d)(1)..............................................................................................................3, 7

**Other Authorities**

*Lightweight Thermal Paper from Germany*,
    76 Fed. Reg. 76360 (Dec. 7, 2011)...................................................................................2, 4

## COMMENTS OF PLAINTIFFS DOMTAR CORPORATION AND APPVION, LLC IN OPPOSITION TO COMMERCE'S REMAND DETERMINATION

Domtar Corporation and Appvion, LLC (the "Domestic Industry Plaintiffs") submit these comments in opposition to Commerce's Final Results Of Redetermination Pursuant To Court Remand ("*Final Redetermination*") (Aug. 29, 2025) (ECF No. 99). As explained below, the interest accruing during the period of investigation ("POI") on Koehler's unpaid antidumping duty liabilities should have been deducted from constructed export price ("CEP") rather than included in cost of production ("COP"). These comments present essentially the same legal issue as that being litigated on appeal of the first administrative review of this order in *Domtar Corp. v. United States*, CIT Case No. 24-113, in which post-argument briefing was completed in July. Accordingly, if this Court remands Case No. 24-113 for reconsideration of this issue by Commerce, it should do so in this appeal as well.

### I.    COMMERCE ERRED IN FAILING TO REDUCE CEP BY INTEREST ACCRUING ON UNPAID ANTIDUMPING DUTIES

During the POI, Koehler incurred interest expenses on its substantial unpaid antidumping duty liabilities arising from its activities importing and reselling to unaffiliated U.S. customers thermal paper under the (now-revoked) 2008 antidumping order on lightweight thermal paper from Germany (the "*2008 Order*"

or "*LWTP Order*").  See Petitioners' Case Br. (Aug. 16, 2021) at 18-22 (C.R. 350, P.R. 271).  In the *Final Redetermination*, Commerce captured that interest in COP. *Final Redetermination* at 20-22.  This expense should have been reclassified as U.S. indirect selling expenses (INDIRSU) to be deducted from CEP.

According to Commerce,

> the accrued interest expenses at issue do not relate to economic activities performed to sell subject merchandise covered by the Order to the United States.  Rather, they arise as a result of Koehler's unwillingness to fulfill its obligations pertaining to antidumping duties owed on U.S. sales of merchandise covered by the now revoked *LWTP Order*.  Thus, because they do not relate to U.S. sales of subject merchandise covered by the Order, we find no basis to deduct these expenses as an adjustment to CEP, pursuant to section 772(d)(1) of the Act and 19 CFR 351.402(b).

*Final Redetermination* at 21.

This analysis is mistaken.  The interest expense incurred during the instant POI arose from liabilities generated entirely by Koehler's commercial activities in the United States importing and selling thermal paper to unaffiliated purchasers. During the periods giving rise to the underlying liabilities at issue here, Koehler itself served as the importer of record and made direct sales of thermal paper to unaffiliated U.S. customers.  *See Lightweight Thermal Paper from Germany*, 76 Fed. Reg. 76360, 76364 (Dec. 7, 2011) (preliminary results of the 2009-2010 second administrative review) ("In the U.S. market, Koehler reported that its sales

were made through three channels of distribution: (1) Market direct-shipment sales through its U.S. affiliated distributor, Koehler America, Inc. (*i.e.*, CEP sales), (2) warehouse sales made through Koehler America, Inc. (*i.e.*, CEP sales), (3) and direct sales from Koehler AG to the customer (*i.e.*, EP sales)…. Koehler has reported that it served as the importer of record for all of its U.S. sales during the POR"). The antidumping duties were "associated with commercial activities in the United States," and they necessarily "relate{d} to the sale to an unaffiliated purchaser." Any interest accruing during the instant POI on such underlying liabilities should similarly have been deemed to relate to the same U.S. economic activities, and thus, it should have been treated as a price adjustment rather than as a cost component.

Moreover, it is irrelevant that the liabilities arose from thermal paper entries made under the *2008 Order* rather than pursuant to the current 2021 investigation. 19 U.S.C. § 1677a(d)(1) permits the deduction of indirect selling expenses incurred "in selling the subject merchandise." The term "subject merchandise" is defined as "the class or kind of merchandise that is within the scope of an investigation, a review, a suspension agreement, an order under this subtitle or section 1303 of this title, or a finding under the Antidumping Act, 1921." 19 U.S.C. § 1677(25). Here, the "class or kind of merchandise" covered by the scope of the 2021 investigation is the same as the "class or kind of merchandise" covered by the scope of the *2008*

*Order*, *i.e.*, thermal paper in rolls.[1]  All of Koehler's products that were subject to the *2008 Order* (sales of which generated the antidumping liability at issue) also are subject to the 2021 investigation; there are no products that were covered by the *2008 Order* but that are not also covered by the 2021 investigation.

Because both orders cover the same class or kind of merchandise, entries under the *2008 Order* should be considered "subject merchandise" as that term is used in the statute for purposes of both orders. The interest expenses at issue incurred during the instant POI, therefore, also relate to sales of "subject merchandise" in this investigation.  The statute provides no basis to deny the requested CEP adjustment merely because the liability arose under a now-revoked order covering the same class or kind of merchandise.

The *Final Redetermination* further states that:

> Koehler will continue to accrue these interest
> expenses until it pays the underlying liability,
> regardless of whether it continues to sell subject
> merchandise to the United States.  Therefore, these
> accrued interest expenses were not incurred for the
> purpose of selling thermal paper covered by the Order
> to the unaffiliated customer in the United States.  As
> such, it would be inappropriate to consider Koehler's
> accrued interest expenses an indirect selling expense

---

[1] The scope of the 2021 investigation includes the exact same products covered by the prior 2008 *LWTP Order*, plus jumbo rolls in basis weights exceeding 70 grams per square meter ("gsm").  And the 2021 Order treats all thermal paper rolls -- including both (1) the set of products previously covered by the 2008 Order and (2) the heavier basis weight jumbo rolls -- as part of the same, single "class or kind of merchandise." *2021 Order*, 86 Fed. Reg. at 66286-87. *See also Lightweight Thermal Paper from Germany*, 76 Fed. Reg. 76360, 76361 (Dec. 7, 2011).

>that can be deducted from CEP under section 772(d)(1)(D) of the Act or 19 CFR 351.402(b).

*Final Redetermination* at 21.

The fact that Koehler incurs the interest expense regardless of whether it sells the subject merchandise is no rationale for not considering it an "indirect selling expense." As explained in the *Statement of Administrative Action accompanying the Uruguay Round Agreements Act*, H.R. Doc. No. 103-316 (1994) ("SAA"),

>Section 772(d)(l)(D) provides for the deduction of indirect selling expenses from constructed export price. Indirect selling expenses are expenses which do not meet the criteria of "resulting from and bearing a direct relationship to" the sale of the subject merchandise, do not qualify as assumptions, and are not commissions. Such expenses would be incurred by the seller *regardless of whether the particular sales in question are made*, but reasonably may be attributed (at least in part) to such sales.

SAA at 824 (emphasis added). As stated in the glossary section of Commerce's antidumping questionnaire issued to Koehler, "indirect expenses are fixed expenses that are incurred whether or not a sale is made." Antidumping Questionnaire (Dec. 1, 2020) at I-6 (P.R. 87). "Common examples of indirect selling expenses include inventory carrying costs, salesmen's salaries, and product liability insurance." *Id*. at I-6-7. Koehler was instructed to report such fixed selling expenses, such as "sales office rent and salesmen's salaries incurred in the

- 5 -

United States" in the "INDIRSU" field, which is to be deducted from CEP. *Id.* at C-33.

Here, the liability arose solely from Koehler's activities of importing thermal paper and reselling it to U.S. customers. Although it is correct that the interest expense is fixed, in the sense that it accrues each year regardless of the level of Koehler's current sales (like office rent), that is no impediment to deducting it as an indirect selling expense. Because the interest is related to Koehler's commercial activities selling thermal paper in the United States, it is appropriate to capture this expense in INDIRSU rather than in INTEX as a cost component. For the final redetermination, therefore, the interest expenses should be reclassified as U.S. indirect selling expenses.

In the *Final Redetermination*, Commerce responded to this argument by claiming that the interest expenses here still do not meet the test for deduction of indirect expenses described in the SAA, because they cannot reasonably be attributed (even in part) to sales of subject merchandise covered by the 2021 Order. *Final Redetermination* at 30-31. But again, Koehler's antidumping duty liability arose entirely from the company's activities importing and selling thermal paper (*i.e.*, the same class or kind of merchandise covered by the 2021 Order) to U.S. customers. And the interest expense sought to be deducted from CEP is only that portion accruing during the October 1, 2019 through September 30, 2020 POI of

the 2021 investigation.  That interest expense, just like other fixed expenses such as office rents or salesman's salaries, "reasonably may be attributed (at least in part)" to Koehler's U.S. thermal paper sales during the POI.

This Court previously has held that interest expenses incurred by a respondent to finance its antidumping cash deposits *should* be treated as "indirect selling expenses" and deducted from CEP pursuant to 19 U.S.C. § 1677a(d)(1). *NTN Bearing Corp. v. United States*, 27 CIT 129, ___, 248 F. Supp. 2d 1256, 1269 (2003).  There is no reason why interest expenses incurred to finance final antidumping duty assessments (such as those at issue here) should be treated differently.  Accordingly, Commerce erred in failing to capture the expense at issue in INDIRSU.

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons set forth above, the Domestic Industry Plaintiffs request that the Court enter judgment on the administrative record in their favor and remand the *Contested Determination* with instructions for Commerce to reconsider whether interest accruing on unpaid antidumping duties should be deducted from CEP.

        Respectfully submitted,

        */s/ Stephen J. Orava*
        Stephen J. Orava
        Daniel L. Schneiderman

        KING & SPALDING LLP
        1700 Pennsylvania Avenue, NW
        Washington, DC  20006
        (202) 737-0500

        *Counsel For Domtar Corporation and Appvion, LLC*

September 29, 2025

## CERTIFICATE OF COMPLIANCE
## WITH WORD COUNT LIMITATIONS

Pursuant to paragraph 2(B)(2) of the U.S. Court of International Trade's *Standard Chambers Procedures*, the undersigned certifies that this brief complies with the word count limitations set forth in the Court's scheduling order. Exclusive of the exempted portions, as provided in paragraph 2(B)(1), this brief includes <u>1633</u> words. In preparing this certificate, the undersigned has relied upon the word count feature of the word-processing system used to prepare the submission.

<u>/s/ Daniel L. Schneiderman</u>
Daniel L. Schneiderman

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW,
Washington, DC 20006
(202) 737-0500

*Counsel For Domtar Corporation and Appvion, LLC*

September 29, 2025

348511v12